UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

DEVRA BYRON,

       Plaintiff,                                Case No. 11-13445
                                                     Honorable Thomas L. Ludington

v.

ST. MARY'S MEDICAL CENTER,

       Defendant.
_____/

**OPINION AND ORDER RESOLVING PARTIES' MOTIONS IN LIMINE**

Plaintiff Devra Byron was written up five times for being absent from work and warned not to miss any more days or she would lose her job. Her employment was terminated by Defendant St. Mary's Medical Center when she did not comply. She now claims her employment was terminated in violation of the Family Medical Leave Act (FMLA).

Defendant is a qualifying employer under the FMLA, and the question of fact to be tried is whether Plaintiff's employment was terminated in violation of FMLA requirements. The FMLA provides eligible employees up to twelve weeks of unpaid leave each year if the employee has "a serious health condition" that prevents her from working. § 2612(a)(1)(D). The FMLA offers aggrieved employees a private right of action under two different theories: "the interference or entitlement theory . . . and the retaliation or discrimination theory." *Branham v. Gannett Satellite Information Network, Inc.*, 619 F.3d 563, 568 (6th Cir. 2010) (citations omitted) (internal quotation marks omitted).

Plaintiff brings suit under both theories, claiming that Defendant interfered with her rights in denying her FMLA leave, and terminated her employment in retaliation for taking leave. Pl.'s Resp. 14. To prevail on either claim, Plaintiff must prove that: (1) she was entitled

to FMLA leave, § 2612(a)(1); and (2) she gave Defendant notice of her intention to take that leave. § 2612(e)(1). Defendant argues Plaintiff was not entitled to FMLA leave, and even if she was, failed to give notice of her intention to take it.

Defendant filed four separate motions *in limine* to exclude evidence at the trial, and Plaintiff responded with a motion of her own. After an October 30, 2012 settlement conference, the Court ordered supplemental briefing to clarify the parties' factual positions and legal theories before ruling on the motions. Plaintiff suggests that there is no dispute whether she suffered a "serious health condition" under the FMLA, and asks the issue be resolved in her favor as a matter of law. Plaintiff also argues that "there can be no dispute that [she] provided timely notice of her May 11, 2009 absence to the Defendant." Pl.'s Supp. Br. 4. Defendant responds to the contrary. These issues, as well as the parties' five motions *in limine*, will be addressed below.

**I**

Plaintiff began working for Defendant on September 18, 1992. At the time of her termination, Plaintiff was a full-time electrocardiography technician (EKG tech). Her job involved performing 12 lead EKGs on patients throughout Defendant's hospital.

Defendant had an absentee policy that outlined consequences for accumulating unscheduled employee absences. Under the policy, eight absent occurrences within a rolling twelve-month period may result in a suspension. Nine occurrences may lead to termination. "Absent occurrences" are not simply days missed, but either one shift, or "one group of consecutive work shifts," where an employee is not present as scheduled. Between August of 2005 and February of 2009, a period of forty-three months, Plaintiff was absent without

permission from a total of thirty-three shifts over twenty-seven occurrences. She received multiple verbal or written warnings regarding her absenteeism.

Plaintiff was scheduled to work shifts on May 9, 10, and 11 of 2009, scheduled from 7:00 a.m. until 3:30 p.m. During her May 9 and 10 shifts, Plaintiff began feeling a burning sensation in her sternum. On Sunday evening, May 10, she was unable to keep any food down, and her pain and nausea persisted through the night and into the morning. Plaintiff woke on May 11, 2009 and knew she was too sick to work. Plaintiff then went to Defendant's emergency room. She was admitted and diagnosed with acute pancreatitis. Plaintiff alleges that after her release, she called her supervisor Janet Clayton. According to Plaintiff, she told Ms. Clayton she had been discharged from the hospital after being diagnosed with acute pancreatitis, that she was instructed to follow up with her primary care physician, and that she would provide her discharge papers for Ms. Clayton's records.

The next day, Plaintiff was scheduled to work again, and she arrived at work around 6:30 a.m. Just after 2:00 that afternoon, Plaintiff was escorted down to Human Resources. She was informed that the previous day, May 11, had been her ninth absent occurrence within twelve months. Plaintiff's employment with Defendant was then terminated. The next day, May 13, 2009, Plaintiff went to see her primary care physician, J. B. Johnson, M.D. During the appointment, she had Dr. Johnson complete FMLA request forms. Dr. Johnson, although with some lack of clarity, established that Plaintiff had been to the ER, diagnosed with acute pancreatitis, and would be incapacitated for ten days. Further, Dr. Johnson advised Plaintiff to follow up with him in seven to ten days' time.

During the next few months, Plaintiff was involved with a three-step grievance process. At each step her grievance was denied. She never once requested FMLA leave. Then, on

August 8, 2011, Plaintiff filed a complaint against Defendant, charging that she had been terminated in violation of her FMLA rights.

## II

The supplemental briefing provided by the parties was not intended to be a summary judgment motion for Plaintiff. Instead, the briefing was to address the factual bases and associated legal theories for the motions *in limine* pending before the Court. *See* Opinion & Order 2, ECF No. 34. Nevertheless, Plaintiff has taken the opportunity to ask for judgment as a matter of law on both issues in the case, and only briefly discussed why her motion *in limine* has merit.

As to the first element, whether Plaintiff suffered from a "serious health condition," there are factual disputes to be resolved by a jury. As noted in the Court's September 11, 2012 Opinion and Order, "Viewing the facts in Plaintiff's favor, a reasonable jury could conclude that she was entitled to FMLA leave on May 11, 2009." Opinion & Order 8, ECF No. 20. This does not indicate the Court concluded the issue was beyond dispute. As Defendant emphasizes, the emergency room discharge papers supporting Plaintiff's pancreatic condition do not indicate that every case requires hospitalization, subsequent treatment, or surgery. When viewed in the light most favorable to Plaintiff, evidence that her condition could require such treatment overcomes Defendant's motion for summary judgment. It does not, however, eradicate factual disputes as to whether Plaintiff in fact suffered a qualifying illness. This issue will not be decided as a matter of law, but will await resolution by a jury.

Factual disputes also exist as to the second element — whether Plaintiff gave Defendant proper notice of her need for FMLA leave. Plaintiff asserts that she had a conversation with her supervisor, Ms. Clayton, and indicated she had just been released from the emergency room. Plaintiff contends this conversation is sufficient to show she provided notice as a matter of law.

Not so. Whether notice was given is a question of fact. *Cavin v. Honda of America Mfg., Inc.*, 346 F.3d 713, 723 (6th Cir. 2003) (quoting *K & M Joint Venture v. Smith Int'l, Inc.*, 669 F.2d 1106, 1111 (6th Cir. 1982)). Ms. Clayton provided an affidavit in which she stated that Plaintiff did not tell her she was not coming in to work on May 11, 2009, and further that Plaintiff "did not, at any time, advise me that she was requesting FMLA leave." Pl.'s Supp. Br. Ex. 1 ¶¶ 2–3. While a plaintiff need not mention the FMLA to give proper notice, such an affidavit raises the question of whether Plaintiff ever spoke to Ms. Clayton on May 11, 2009. This issue will also not be resolved at this point as a matter of law. The motions *in limine* will now be addressed.

### III

Under the Federal Rules of Evidence, relevant evidence is admissible unless the United States Constitution, a federal statute, the Rules of Evidence, or other rules prescribed by the Supreme Court provide otherwise. Fed. R. Evid. 402. Irrelevant evidence is not admissible. *Id*. Evidence is "relevant" if it tends to make a material fact more or less probable. Fed. R. Evid. 401. Even if relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence. Fed. R. Evid. 403.

Although neither the Federal Rules of Civil Procedure nor the Federal Rules of Evidence provide expressly for the exclusion of evidence *in limine* before trial, "[i]n general, federal district courts have the power to exclude evidence *in limine* pursuant to their inherent authority to manage trials." *Luce v. United States*, 469 U.S. 38, 41 n. 4 (1984). "The purpose of a motion *in limine* is to permit the Court to decide evidentiary issues in advance of trial in order to avoid delay and ensure an evenhanded and expeditious trial." *Corporate Commc'n Services of Dayton, LLC v. MCI Communications Services, Inc.*, 2010 WL 1445169, at *1 (S.D. Ohio Apr. 12, 2010).

A court will generally not grant a motion *in limine* unless the moving party "meets its burden of showing that the evidence in question is clearly inadmissible." *Id*. (citing *Indiana Insurance Co. v. General Electric Co.*, 326 F. Supp. 2d 844, 846 (N.D. Ohio 2004)). "If such a showing is not made, evidentiary rulings should be deferred and resolved in the context of trial." *MCI Communications*, 2010 WL 1445169, at *1.

## IV

Defendant moves to exclude four separate pieces of evidence in four separate motions *in limine*: (1) any argument or testimony concerning Defendant's core values; (2) Plaintiff's high performance evaluations as Defendant's employee; (3) the location of a 2008 FMLA application filed by Plaintiff; and (4) one sentence from Dr. Johnson's May 13, 2009 medical records. Plaintiff argues that her poor attendance record at work should also be excluded.

### A

Defendant's website lists a number of "values." One of those values is reverence, which is defined as "respect and compassion for the dignity and diversity of life." Other values are "Service of the Poor"; "Integrity"; "Wisdom"; "Creativity"; and "Dedication." During depositions, Plaintiff's counsel questioned witnesses about Defendant's core values, and whether the Defendant had conformed with those values. Def.'s Mot. Core Values 2, ECF No. 24. Defendant moves to exclude any and all testimony concerning its core values as irrelevant.

Plaintiff has brought suit under two distinct theories — interference with her ability to take FMLA leave, and retaliation for taking FMLA leave. While conceding that Defendant's core values are not relevant to her interference claim, Plaintiff asserts it is an element of her retaliation claim. Pl.'s Resp. Core Values 4, ECF No. 30. A prima facie case of FMLA retaliation requires three elements: (1) the plaintiff availed herself of a protected right under the FMLA; (2) was then adversely affected by an employment action; and (3) there was a causal

connection between the protected right and the adverse action. *Skrjanc v. Great Lakes Power Service Co.*, 272 F.3d 309, 314 (6th Cir. 2001).

As proof of retaliation, Plaintiff relies on the proximity in time between her "request" for leave and her discharge. "This is a form of indirect evidence." *Id*. at 315. When a plaintiff relies on indirect evidence in an FMLA case, the three-step process established by *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), applies to analyze the claim. Plaintiff must first prove a prima facie case of discrimination. *Skrjanc*, 272 F.3d at 315. Defendant then assumes the burden to show a legitimate, nondiscriminatory reason for Plaintiff's discharge. *Id*. Plaintiff then must demonstrate that "the articulated reason is in reality a pretext to mask discrimination." *Id*.

Plaintiff claims that "an employer that breaches its stated employment policies can constitute pretext." Pl.'s Resp. Core Values 4. For this proposition, Plaintiff relies on *Owczarzak v. St. Mary's of Michigan*, 2011 WL 5184225 (E.D. Mich. Nov. 1, 2011), and *DeBoer v. Musashi Auto Parts*, 124 F. App'x 387, 394 (6th Cir. 2005). When examined, however, the cases do not support Plaintiff's position. In *Owczarzak*, the plaintiff was terminated even though he was "one of the best nurses" at the defendant's hospital. 2011 WL 5184225, at *12. The defendant's employment policy established that employment decisions would be made "on the basis of individual merit, skill and qualification." *Id*. The plaintiff argued his merit, skill, and qualifications were not taken into account when he was fired, and the court noted that the defendant's failure to account for the plaintiff's ability could constitute pretext.

In *DeBoer*, the plaintiff received poor supervisory skills reviews months before her termination, but was not fired at that time. 124 F. App'x 387, 394. Only once she announced

she was pregnant was the plaintiff fired because of her negative reviews. *Id*. The court maintained that defendant's lack of concern with the plaintiff's supervisory skills "until after she announced her pregnancy is additional evidence of pretext." *Id*.

In this case, Plaintiff attempts to show that Defendant did not treat her with reverence, and as such, violated its employment policy — evidence of pretext. But whether employees are served reverently is not equivalent to whether an employee's skills were taken into account before termination, or whether poor employment reviews were ignored until after leave is requested. Reverence to employees is a philosophical point of mission as to how Defendant wished to treat people; not an employment policy that can be uniformly applied, or if misapplied, analyzed to establish pretext. If Plaintiff's point was accepted, will she be required to show that as Defendant's employee, she also showed reverence to those she served? Will reverence reciprocity be required in examining her employment record? This type of analysis is not relevant to the determination of whether Plaintiff's employment was terminated in violation of the FMLA.

Further, the idea that Defendant did not show "reverence" to Plaintiff, or somehow ignored its other core values, is not the type of employment policy that can be used to demonstrate that the Defendant's asserted reason for the termination is pretextual. It would only confuse the jury, elongate the trial, and waste time. As such, any evidence or testimony concerning Defendant's core values is not admissible under Federal Rule of Evidence 403. Defendant's motion to exclude evidence of core values will be granted.

**B**

Defendant next moves to exclude Plaintiff's high performance evaluations, asserting that Plaintiff was not fired based on her performance, but because of her attendance. Def.'s Mot. Performance 2, ECF No. 25. But as noted above, performance of an employee can be considered

when identifying pre-textual reasons for terminating employment. This conclusion is supported by the Sixth Circuit's decision in *Arban v. West Pub. Corp.*, 345 F.3d 390, 403 (6th Cir. 2003) (finding employer's reason for terminating employee was pre-textual, in part based on "evidence of [employee's] performance appraisals."). Because this evidence could be relevant to the case as it progresses, it will not be excluded at this point, and Defendant's motion to prohibit this evidence will be denied.

**C**

Defendant next moves to exclude evidence that in 2008 it lost Plaintiff's FMLA paperwork. Defendant's argument is persuasive. In 2008, Plaintiff sought a separate period of FMLA leave, which was granted. Paperwork relating to that leave, however, appears to have been lost. And Defendant wishes to exclude any evidence concerning whether that application was lost or misplaced. Defendant believes whether the 2008 application was lost has no bearing on whether the 2009 application was ever received. Def.'s Mot. 2008 App. 2, ECF No. 23.

Plaintiff responds that Defendant's argument "is nothing more than a statement of Rule 404(b)(1) of the Federal Rules of Evidence." Pl.'s Resp. 2008 App. 3. Plaintiff then asserts the evidence is relevant to the question of accident or mistake, not to improperly establish propensity. *Id.* at 4.

Using evidence to show lack of accident or mistake is sometimes relevant to show intent. Roger C. Park, David P. Leonard & Steven H. Golberg, *Evidence Law* § 5.22 (2d ed. 2004). The evidence may be used to show "the existence of the state of mind that is a prerequisite for the commission of the crime." *Id.* The same principles apply in a civil case.

But here, the question is not whether Defendant intended to lose the FMLA application; Defendant's state of mind in maintaining possession of the application is not a question the jury will be asked to answer. The jury will be asked if Plaintiff notified Defendant of her intent to

take FMLA leave.  Before the 2008 application is relevant to this determination, Plaintiff must offer some evidence that the 2009 application was sent to Defendant.  Only then could misplacing the 2008 application be relevant.  Plaintiff's own deposition testimony undermines her claim that evidence of the 2008 application should be admitted here.  She testified,

> Q:   . . . you did not submit to the hospital documentation giving notice of your illness and requesting FMLA for 5-11-09, did you?
> A:   I am not sure.  I cannot remember.
> Q:   All right.  Did you personally ever submit a form requesting FMLA leave for 5-11-09?
> A:   Yes, when I had Dr. Johnson fill it out I believe.
> Q:   And how did you get it to the hospital?
> A:   I mailed it I believe.  I'm not real sure to be truthful with you.  I know I had him fill it out.  He mailed it back I believe.

Pl.'s Dep. 53.  Plaintiff has therefore not shown that her 2009 FMLA application was ever sent to Defendant by her own hand.

Even if the 2008 application was relevant, it would still be subjected to Rule 403's balancing test.  "If the evidence is relevant only to show character, then its use is prohibited by . . . Rule 404(b) . . . If the evidence is relevant for some other purpose . . . then the probative value of the evidence must be balanced against its prejudicial effect, as well as the waste of time and confusion."  Roger C. Park, et al. *Evidence Law* at § 5.16.  Dr. Johnson has been placed on Plaintiff's witness list, and so may testify that he sent the FMLA application to Defendant.  Upon such testimony, Plaintiff may elicit evidence concerning the 2008 application, subject to Rule 403 as determined in the context of trial.  Until that time, the evidence will be excluded, and Defendant's motion will be conditionally granted.

**D**

Defendant's final motion is to exclude one statement from Dr. Johnson's medical records stemming from his treatment of Plaintiff on May 13, 2009.  Apparently, Plaintiff told Dr.

Johnson "She let her boss know" about her condition, and he noted the statement in his notes. Defendant claims the statement, not the record in its entirety, should be excluded.

Plaintiff asserts that the statement is an excited utterance under Federal Rule of Evidence 803(2). Rule 803(2) excludes from hearsay, "A statement relating to a startling event or condition, made while the declarant was under the stress of excitement that it caused." To qualify as an excited utterance: "(1) there must be an event startling enough to cause nervous excitement; (2) the statement must be made before there is an opportunity to contrive or misrepresent; and (3) the statement must be made while the person is under the stress of the excitement caused by the event." *United States v. Aleman-Ramos*, 155 F. App'x 845, 849 (6th Cir. 2005). The Sixth Circuit has noted "the ultimate question is whether the statement was the result of reflective thought or whether it was a spontaneous reaction to an exciting event." *Id*. (quoting *Haggins v. Warden, Fort Pillow State Farm*, 715 F.2d 1050, 1058 (6th Cir. 1983).

What Plaintiff said the day following her termination, no matter how unexpected the termination may have been, is certainly not a "spontaneous reaction" to the event within the purview of Rule 803(2). The statement was not made "before there is an opportunity to contrive or misrepresent." *Aleman-Ramos*, 155 F. App'x at 849. The exception to hearsay under 803(2) does not apply, and the statement will be excluded. Defendant's motion will be granted.

**E**

Finally, Plaintiff asserts that any evidence of her poor attendance record should be excluded, claiming "the prior absences and discipline is irrelevant as to the two elements Plaintiff is required to prove." Pl.'s Br. 8. This is not the case, and the evidence will not be excluded at this point.

Plaintiff has consistently maintained that she is bringing suit under both an interference theory *and* a retaliation theory. As noted above, proof of retaliation involving indirect evidence,

as here, implicates the three-step process established by *McDonnell Douglas*. Defendant's ability to show a legitimate, nondiscriminatory reason for Plaintiff's discharge will become a central issue in the case, *Skrjanc*, 272 F.3d at 315, to which Plaintiff's absences and discipline is highly probative. Because Plaintiff continues to rely on both theories of recovery under the FMLA, the evidence will not be excluded, and Plaintiff's motion will be denied.

**V**

Accordingly, it is **ORDERED** that Defendant's Motion *in Limine* to exclude evidence of the location of Plaintiff's 2008 FMLA application, ECF No. 23, is **CONDITIONALLY GRANTED**.

It is further **ORDERED** that Defendant's Motion *in Limine* to exclude evidence of Defendant's core values, ECF No. 24, is **GRANTED**.

It is further **ORDERED** that Defendant's Motion *in Limine* to exclude Plaintiff's high performance evaluations, ECF No. 25, is **DENIED**.

It is further **ORDERED** that Defendant's Motion *in Limine* to exclude Plaintiff's statement within Dr. Johnson's report, ECF No. 26, is **GRANTED**.

It is further **ORDERED** that Plaintiff's Motion *in Limine* to exclude evidence of past absences and discipline, ECF No. 33, is **DENIED**.

s/Thomas L. Ludington  
THOMAS L. LUDINGTON  
United States District Judge

Dated: December 19, 2012

**PROOF OF SERVICE**

The undersigned certifies that a copy of the foregoing order was served upon each attorney or party of record herein by electronic means or first class U.S. mail on December 19, 2012.

s/Tracy A. Jacobs<br>
TRACY A. JACOBS